IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

DEON LAMON JONES

       Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality,
JOSE MANRIQUEZ, in his individual and official capacity,
DAMON ROMAN, in his individual and official capacity, and
GREGORY BLACK, in his individual and official capacity,

       Defendants.

**COMPLAINT AND JURY DEMAND**

       Plaintiff by and through his attorneys, David A. Lane, and Eleanor K. Wedum of KILLMER, LANE & NEWMAN, LLP, respectfully alleges for his Complaint requests a trial by jury as follows:

**INTRODUCTION**

       1.    This is an action for damages against Defendant City and County of Denver, and Defendants Jose Manriquez, Damon Roman and Gregory Black (individual law enforcement defendants collectively referred to as "Defendant Officers"), all members of the Denver Police Department.

       2.    According to the body camera recordings of the defendant, solely because Plaintiff is an African American man from Aurora who was spotted in Denver at an early morning hour, Defendants intentionally, knowingly, recklessly, and with deliberate indifference

to Plaintiff's constitutional rights, unlawfully entered his vehicle at gunpoint and subjected him to an intrusive and unjustified seizure of both his person and his car. Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights when they recklessly, knowingly, intentionally, willfully, and wantonly arrested Plaintiff, knowing that Plaintiff had committed no violation of law.

3. Defendants' conduct was performed under color of state law and directly or proximately caused the deprivation of Plaintiff's federally protected rights. Defendant Denver has a continuing, persistent and widespread practice of unconstitutional misconduct by its police officers engaging in unlawful searches and seizures, false arrests, and racially motivated violations of the Equal Protection Clause. Defendant Denver exhibits deliberate indifference to or tacit approval of its police officers' misconduct, which is Denver's official custom, policy, or practice. That custom, policy, or practice was the moving force behind Defendants' unconstitutional acts.

4. Defendant Denver failed to adequately train and supervise Defendant Officers concerning the Fourth and Fourteenth Amendments and unlawful seizures by means false arrest and unlawful searches of private vehicles. Defendant Denver tacitly approved of its officers' conduct by retaining their employment and/or completely failing to discipline them.

## JURISDICTION AND VENUE

5. Jurisdiction over these claims is conferred upon this Court pursuant to 28 U.S.C. § 1331 and § 1343(a)(3), and this case is brought pursuant to 42 U.S.C. § 1983. Jurisdiction supporting Plaintiffs' claims for attorney fees is conferred by and brought pursuant to 42 U.S.C. § 1988.

2

6. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State of Colorado at all relevant times stated herein.

## PARTIES

7. At all times relevant to this Complaint, Plaintiff was a citizen of the United States of America and a resident of the State of Colorado.

8. Defendant City and County of Denver is a political subdivision of the State of Colorado.

9. At all times relevant to this Complaint, Officer Jose Manriquez, Badge No. 014084; Officer Damon Roman, Badge No. 14083; and Officer Gregory Black, Badge No. 15004 were employed by the City and County of Denver as members of the Denver Police Department, and acting under color of state law.

10. At all times relevant to this Complaint, Defendant Denver and all of its agents and employees were acting within the scope of their official duties and employment, under color of state law.

## FACTS

11. Mr. Jones is an African-American male, and he is identifiable by his appearance as such.

12. On or about April 26, 2016, Mr. Jones drove to his friend's apartment building at 1509 North Pearl Street, Denver, Colorado.

13. Mr. Jones was legally parked in the parking garage of 1509 North Pearl Street, waiting for his friend to come down from her apartment. As he was waiting, he noticed police vehicles pull into the garage behind him.

14. Fortunately, the entire encounter between Mr. Jones and the Defendants was recorded on the Defendants' body cameras.

15. In an abundance of caution, prior to any police contact, Mr. Jones took out his license and registration, despite not being engaged in any suspicious or dangerous activity whatsoever.

16. Despite having no reason other than their own racist suspicions, confirmed by the officer's body camera, that a black man didn't belong in Denver at that hour, Defendant Officers ran Mr. Jones' license plates. Upon discovering that his car was registered in Aurora, a city with a large African-American population, Defendant Officers Black and Manriquez then approached Mr. Jones' vehicle, one on the passenger side and one on the driver's side, and started yelling for him to show them his license.

17. Mr. Jones immediately put his hands up, with his license in one hand, and began asking the officers what he had done wrong.

18. The officer on the driver's side of the vehicle, Officer Gregory Black, immediately ordered Mr. Jones out of the car, and told him "you're being detained." When he asked why he was being detained and told to get out of the vehicle, Officer Black responded "or you're going to jail."

19. Officer Black then abruptly opened the driver's side door. Startled, Mr. Jones instinctively pulled the door closed.

4

20. Officer Black immediately stepped back and drew his gun, pointing it at Mr. Jones. He then ran back to his police vehicle and pulled it closer to Mr. Jones' car, blocking him in.

21. As soon as Officer Black pulled his gun, Officer Jose Manriquez did the same and approached Mr. Jones' passenger window with his gun drawn. Mr. Jones turned towards Officer Manriquez with both hands in the air, stating clearly "I'm not doing nothing, officer. My hands is right here."

22. While Mr. Jones was turned toward the passenger window addressing Officer Manriquez, Officer Black returned to the driver's side with his gun drawn. Mr. Jones was sitting in the vehicle, plainly visible, with both hands up. Officer Black yanked the door open again, and despite the fact that both of Mr. Jones' hands were clearly visible, he shouted "if you put your hand down there, I will shoot you."

23. Officer Black then ordered Mr. Jones out of the car at gunpoint and forced him to the ground.

24. At this point, for inexplicable reasons given that the situation had not escalated or turned dangerous in any way, several other officers arrived on the scene. Officer Damon Roman came to assist the two original officers with Mr. Jones, who had exhibited no forms of resistance or violence.

25. As he was on the lying face down on the ground, at least three officers, including Officers Black, Manriquez and Roman handcuffed Mr. Jones and searched his person.

26. When Mr. Jones attempted to inform the officers that they were violating his rights, Officer Black flippantly replied, "yeah, you're telling me something I already know."

27. Officer Manriquez then returned to the passenger side of Plaintiff's vehicle, opened the door, and began to search the car without a warrant or probable cause do to so.

28. In recounting the event to another officer who arrived on scene after the fact, Officer Manriquez confirms that the initial motivation for contacting Mr. Jones was racial profiling, saying, "we pull in here, the vehicle's registered out of Aurora, so we start contacting him."

29. The officers ultimately arrested Mr. Jones and charged him for interference.

30. After transporting Mr. Jones to a nearby police station to await transfer to the Denver County Jail, long after the arrest, Officer Manriquez searched Mr. Jones' pockets again, and this time discovered three plastic bags, two of which were suspected to have contained a controlled substance.

31. Mr. Jones then spent almost three hours in a holding cell.

32. The District Attorney refused to prosecute Mr. Jones due to lack of probable cause for the arrest.

33. In the meantime, Officer Roman towed Mr. Jones' vehicle to a police impound lot for investigation.

34. Officer Manriquez placed a hold on Mr. Jones' vehicle for public nuisance.

35. After he was released, Mr. Jones then had to pay to get the car out of impound.

36. Based *inter alia* upon observations of Mr. Jones, this incident, and the body camera videos of Officer Defendants from the incident, Defendant Denver has an official custom, policy, and/or practice of doing the following to minority individuals: (1) engaging in racial profiling at the initial license plate search on individual vehicles; (2) automatically

6

searching individuals without reasonable suspicion to believe that they have a weapon; and (3) unnecessarily detaining them for extended periods of time in an effort to build some basis for arrest. In the instant case, Officer Defendants' undertook each of the actions described above against Mr. Jones pursuant to Denver's official custom, policy and/or practice.

37. Upon information and belief, none of the Defendant Officers were properly trained on the Fourth Amendment, or how to conduct a lawful seizure, search, and arrest.

38. Upon information and belief, none of the Defendant Officers were disciplined for their actions and this is part of a pattern and practice of failing to discipline officers for constitutional violations. By failing to discipline Defendant Officers for their unconstitutional and illegal conduct, Denver ratified their conduct.

39. As the municipal entity, it is also Denver's responsibility to properly train its officers to ensure they perform their duties correctly and to discipline, rather than ratify their conduct, so that officers can learn from their mistakes and perform their jobs correctly moving forward. Failure to do so will lead to more unconstitutional conduct by Denver's officers

40. All of the acts described herein were done by the Defendants intentionally, knowingly, willfully, wantonly, maliciously and/or recklessly in disregard for Plaintiff's federally protected rights, and were done pursuant to the preexisting and ongoing deliberately indifferent official custom, policy, practice, training, and supervision of the Defendant White and Defendant Denver acting under color of state law.

41. With deliberate indifference to the rights of citizens to be free from racism and other unconstitutional conduct in law enforcement, Defendant Denver has encouraged, tolerated, ratified, and acquiesced to police racism and other unconstitutional conduct by:

7

      a.   failing to conduct sufficient training or supervision with respect to the rights of citizens to be free from racism and other unconstitutional conduct in law enforcement; and

      b.   failing to adequately punish race-based or other unconstitutional conduct law enforcement actions;

42. It is the longstanding, widespread, deliberately indifferent custom, habit, practice, and/or policy of Defendant Denver to permit law enforcement officers to use race and race-based animus as motivation factors and actions, as well as to fail to supervise and to train deputies in the rights of citizens to be free from such race-based decision-making in law enforcement.

## STATEMENT OF CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Fourth Amendment Violation – Unlawful Seizure of Person**
**(Against All Defendants)**

43. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

44. The actions of Defendants as described herein, while acting under color of state law, intentionally deprived Plaintiff of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including his right to be free from unlawful seizure as guaranteed by the Fourth Amendment to the Constitution of the United States of America and 42 U.S.C. §1983, in that Plaintiff was unlawfully physically seized by the Defendants.

45. No Officer Defendant had probable cause, reasonable suspicion, or any other legal basis to believe that Plaintiff had committed or was committing any violation of the law prior to seizing him and continuing to restrain him.

46. No Officer Defendant had probable cause, reasonable suspicion, or any other legal basis to seize and impound Plaintiff's car.

47. Officer Defendants had no warrant authorizing them to contact Plaintiff.

48. No legally recognizable exigent circumstances existed which would have justified or permitted Officer Defendants' conduct.

49. Officer Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

50. Officer Defendants intentionally, willfully and wantonly searched and seized Plaintiff and his vehicle, as described herein, due to his race.

51. Denver has a custom, practice or policy of tolerating violations of the Fourth Amendment and Equal Protection clauses of the United States Constitution, as outlined in the facts *supra.*

52. The district attorney refused to prosecute this case due to the unlawful nature of the search and seizure of Mr. Jones.

53. As a legal and proximate result of Defendants' actions, Mr. Jones has suffered and continues to suffer humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Fourth Amendment Violation – Unlawful Search of Person**

**(Against All Defendants)**

54. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

55. Defendants were acting under color of state law in their actions and inactions which occurred at all times relevant to this action.

56. Plaintiff has a legitimate expectation of privacy in his body and his property being free from unreasonable governmental search.

57. Officer Defendants had no warrant authorizing any such search of Plaintiff's body or property.

58. No legally recognizable exigent circumstances or other legal justification existed which would have justified or permitted Officer Defendants' conduct.

59. Officer Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

60. Officer Defendants engaged in these actions intentionally, willfully and wantonly.

61. As a legal and proximate cause of Defendants' actions, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages, and losses.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourth & Fourteenth Amendment Violation -**
**Unlawful Entry and Search of Vehicle**
**(Against Defendant Manriquez)**

62. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

63. Plaintiff had a constitutionally protected right to be secure against unreasonable

intrusions into and search of his vehicle without reasonable suspicion.

64. Plaintiff was forcefully taken out of his vehicle with no justified reason.

65. Defendant had no reasonable suspicion, probable cause, consent or exigency necessary to lawfully search Plaintiff's vehicle.

66. Defendant's conduct violated clearly established rights belonging to Plaintiff of which reasonable law enforcement officers knew or should have known.

67. Defendant's violation of Plaintiff's rights under the Fourth Amendment and Fourteenth Amendment was the direct and proximate cause of, and moving force behind, Plaintiffs' damages.

68. Defendant's conduct proximately caused significant injuries, damages, and economic losses to Plaintiffs.

### FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Fourth Amendment Violation – Unlawful Seizure of Vehicle
### (Against Defendants Manriquez, Roman, and Denver)

69. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

70. The actions of Defendants as described herein, while acting under color of state law, intentionally deprived Plaintiff of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including his right to be free from unlawful seizure as guaranteed by the Fourth Amendment to the Constitution of the United States of America and 42 U.S.C. §1983, in that Plaintiff's private vehicle was unlawfully seized by the Defendants without probable cause to believe he had committed any offense.

11

71. Defendants intentionally, knowingly, and recklessly confiscated and impounded Plaintiff's vehicle without any reasonable justification or probable cause.

72. Defendants' conduct violated clearly established rights belonging to Plaintiff of which reasonable law enforcement officers knew or should have known.

73. The acts or omissions of each Defendant were the legal and proximate cause of, as well as the moving force behind, Plaintiff's damages.

74. Defendants' conduct proximately caused significant injuries, damages, and economic losses to Plaintiff.

## FIFTH CLAIM FOR RELIEF
## 42 U.S.C. § 1983
### Fourteenth Amendment Violation – Denial of Equal Protection
### (Against All Defendants)

75. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

76. Defendants were acting under color of state law in their actions and inactions which occurred at all times relevant to this action.

77. At the time of the complained of events, Mr. Jones had the clearly established constitutional right to be free from racial discrimination in law enforcement by police officers and to enjoy the equal protection of the laws.

78. Plaintiff's race was a motivating factor in the decisions to contact and detain him, and to arrest and search his person and vehicle. Officer Defendants' conduct was undertaken with the purpose of depriving Plaintiff of the equal protection and benefits of the law, equal privileges and immunities under the law, and due process in violation of the Fourteenth Amendment.

79. Officer Defendants contacted, searched, and seized Plaintiff, as described herein, without reasonable suspicion or probable cause to believe that Plaintiff had committed a crime and/or was carrying a concealed weapon.

80. Officer Defendants intentionally, willfully and wantonly contacted, searched, and seized Mr. Jones, as described herein, wholly or in part due to his race.

81. Officer Defendants' actions were objectively unreasonable in light of the facts and circumstances confronting them.

82. As a direct and proximate result of Defendants' actions, Mr. Jones has suffered and continues to suffer humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses.

**SIXTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Constitutional Failure to Train and/or Supervise; Informal Custom, Policy, or Practice; Ratification by Final Policymaker**
**(Against Defendant City and County of Denver)**

83. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

84. The unlawful conduct of Defendant Officers, as set forth in detail herein, amounts to an informal custom and widespread practice of violating citizens' constitutional rights, although not authorized by written law or express municipal policy, so permanent and well settled as to constitute a custom or usage with the force of law.

85. Defendant Denver was at all times responsible for the established policies, procedures, customs and/or practices for the Denver Police Department.

86. Defendant Denver developed and maintained law enforcement related policies, procedures, customs, and/or practices exhibiting or resulting in a deliberate indifference to the Fourth and Fourteenth Amendment protected constitutional rights of persons in the City and County of Denver, which proximately caused the violation of Plaintiff's constitutional rights.

87. Defendant Denver failed to properly train and supervise their employees with regard to: (1) unlawful seizures of both persons and vehicles, (2) unlawful search of persons and vehicles, (3) false arrest and (4) discrimination based on race.

88. In light of the duties and responsibilities of those law enforcement officers that participate in providing safety and security for citizens and arrestees, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional rights such as those described herein, that Defendant Denver is liable for its failure to train and to appropriately supervise officers of the Denver Police Department.

89. The inadequate training and supervision provided by Defendant Denver resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Denver.

90. If any training was given to each Defendant Officers concerning civil rights of arrestees to be free from constitutional violations, specifically Fourth and Fourteenth Amendment violations, Defendants knew or should have known that such training was reckless or grossly negligent and that misconduct in that area was almost inevitable.

91. Defendant Denver has a duty to protect the constitutional rights of the members of the public from violations of those rights by members of its Police Department.

92. Defendant Denver knew, or should have known, that dangerous consequences could be suffered by individuals (including Plaintiff) by failing to properly train and supervise its employees. Defendant Denver could have and should have pursued reasonable methods for the training and supervising of such employees, but failed to do so.

93. Defendant's policies, customs, or practices in failing to train and supervise its employees were the proximate cause of, and moving force behind, the violation of Plaintiffs' constitutional rights, which caused Plaintiffs injuries, damages, and losses as set forth above.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against the Defendants, and grant:

(a) Appropriate declaratory and other injunctive and/or equitable relief;

(b) Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(c) All economic losses on all claims allowed by law;

(d) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(e) Attorneys fees and the costs associated with this action on all claims allowed by law;

(f) Pre- and post-judgment interest at the lawful rate; and

(g) Any further relief that this court deems just and proper, and any other relief as allowed by law.

PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.

Dated this 8th day of May, 2017.

        KILLMER, LANE & NEWMAN, LLP


        _/s/ David Lane_____
        David A. Lane
        Eleanor K. Wedum
        KILLMER, LANE &NEWMAN, LLP
        1543 Champa Street, Suite 400
        Denver, Colorado 80202
        (303) 571-1000
        dlane@kln-law.com
        ewedum@kln-law.com

        ATTORNEYS FOR PLAINTIFF