**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 17-cv-01131-CMA-SKC

DEON LAMON JONES,

     Plaintiff,

v.

JOSE MANRIQUEZ, and
GREGORY BLACK,

     Defendants.

---

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO
PLAINTIFF'S FIRST, SECOND, AND THIRD CLAIMS FOR RELIEF, BUT GRANTING
THE MOTION AS TO THE FIFTH CLAIM FOR RELIEF**

---

This matter is before the Court on Defendants Jose Manriquez and Gregory

Black's (together, "Defendants") Motion for Summary Judgment, wherein Defendants

assert that they are entitled to qualified immunity against Plaintiff Deon Lamon Jones's

four remaining claims against them. (Doc. # 65.) Having thoroughly reviewed the

briefing, pertinent exhibits, and applicable law, the Court grants in part and denies in

part Defendants' Motion.

## I.    BACKGROUND

United States Magistrate Judge Scott T. Varholak detailed the factual

background of this case in his Recommendation on Motions to Dismiss (Doc. # 46),

which this Court subsequently affirmed and adopted, *see* (Doc. # 47). The

Recommendation is incorporated herein by reference, and the factual background explained therein need not be repeated here. The Court recounts only the facts necessary to address Defendants' Motion for Summary Judgment.

The matter arises from an encounter Defendants, both officers of the Denver Police Department, initiated with Plaintiff in the early morning hours of April 26, 2016, when Plaintiff was parked in the parking garage of his friend's apartment building in Denver. Defendants ultimately handcuffed, patted down, and arrested Plaintiff on a charge of interference with police authority. Defendants also conducted a visual inspection of the front passenger compartment of his car before taking Plaintiff to the Denver County Jail. The District Attorney later declined to prosecute Plaintiff for interference.

Plaintiff initiated the instant action against Defendants Manriquez, Black, Damon Ramon, and the City and County of Denver on May 8, 2017, alleging violations of the Fourth Amendment for the unlawful seizure and search of his person and his vehicle, violations of the Fourteenth Amendment's Equal Protection Clause, and unconstitutional policies or failure to train. (Doc. # 1.) On November 1, 2017, the Court dismissed several claims pursuant to Federal Rule of Civil Procedure 12(b)(6) upon Defendants' Motions to Dismiss (Doc. ## 17, 28).[1] (Doc. # 47.) Defendants Ramon and the City

---

[1] Relevant here, Defendants Manriquez and Black moved to dismiss Plaintiff's First, Second, Fourth, and Fifth Claims for Relief as alleged against them in their individual capacities, arguing that they were entitled to qualified immunity. (Doc. # 28 at 4.) Magistrate Judge Varholak concluded in his Recommendation that Defendants were **not entitled to qualified immunity** against the First, Second, and Fifth Claims for Relief. (Doc. # 46 at 8–21.) Defendants did not object to Magistrate Judge Varholak's Recommendation. The Court affirmed and adopted the Recommendation in whole, including its analysis of Defendants' qualified immunity arguments. (Doc. # 47.)

and County of Denver were dismissed from the action altogether.  (*Id.*)  Only four claims remain:

    a. **First Claim for Relief**: 42 U.S.C. § 1983, Fourth Amendment violation – unlawful seizure of person, against both Defendants in their individual capacities;

    b. **Second Claim for Relief**: 42 U.S.C. § 1983, Fourth Amendment violation – **unlawful search of person**, against both Defendants in their individual capacities;

    c. **Third Claim for Relief**, 42 U.S.C. § 1983, Fourth and Fourteenth Amendment violations – **unlawful entry and search of vehicle**, against only Defendant Manriquez in his individual capacity; and

    d. **Fifth Claim for Relief**, 42 U.S.C. § 1983, Fourteenth Amendment violation – **denial of equal protection**, against both Defendants in their individual capacities.

(*Id.*); *see* (Doc. # 46 at 27; Doc. # 1.)

Defendants filed the instant Motion for Summary Judgment on October 1, 2018. (Doc. # 65.)  Reprising the argument they made in their Partial Motion to Dismiss (Doc. # 28) and Magistrate Judge Varholak explicitly rejected in his Recommendation (Doc. # 46 at 8–21), Defendants contend that they are entitled to qualified immunity on each of the four remaining claims against them and request that the Court enter summary judgment in their favor (Doc. # 65).  Plaintiff filed his Response to Defendants' Motion for Summary Judgment on November 13, 2018 (Doc. # 73), to which Defendants replied on December 7, 2018 (Doc. # 76).  A three-day jury trial in this matter is set to begin on June 3, 2019.  (Doc. # 90.)

## II.    <u>APPLICABLE LEGAL PRINCIPLES</u>

**A.    SUMMARY JUDGMENT**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party—in the matter presently before the Court, in the light most favorable to Plaintiff. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

4

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cty. Sch. Dist.* 14, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

**B.    QUALIFIED IMMUNITY**

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known*." Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation and citation omitted). To defeat a claim of qualified immunity, a plaintiff must show: "(1) that the defendant's conduct violated a constitutional or statutory right, and (2) that the law governing the conduct was clearly established at the time of the alleged violation." *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004); *see also Pearson*, 555 U.S. at 232. The Court is not required to address these inquiries in any specific order, *Pearson*, 555 U.S. at 236–37, and if a

plaintiff fails to carry either part of his or her two-part burden, the defendant is entitled to qualified immunity, *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

With regard to the second prong of the qualified immunity analysis, "[a] clearly established right is one that is 'sufficiently clear that every reasonable officer would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quoting *Mullenix*, 136 S. Ct. at 308). "The dispositive question is 'whether the violative nature of **particular** conduct is clearly established.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "In the Fourth Amendment context, 'the result depends very much on the facts of each case,' and the precedents must 'squarely govern' the present case." *Aldaba*, 844 F.3d at 877 (quoting *Mullenix*, 136 S. Ct. at 309)).

## C.    SUMMARY JUDGMENT ON THE BASIS OF QUALIFIED IMMUNITY

Though basic principles of summary judgment guide the Court in this contentious case, *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014), the Court's "factual analysis relative to the qualified-immunity question" at the summary judgment phase "is distinct," *Cox v. Glanz*, 800 F.3d 1231, 1243 (10th Cir. 2015). *See also United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 940 n.6 (10th Cir. 2008) ("[W]e acknowledge our long-standing view that the task of district courts . . . is different in

reviewing motions for summary judgment under traditional standards and qualified immunity principles. . . Indeed, courts should exercise care not to confuse the two analytical frameworks.") The Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in [his] favor." *Henderson v. Glanz*, 813 F.3d 938, 952 (10th Cir. 2015) (citing *Estate of Booker*, 745 F.3d at 411.) "Unlike most affirmative defenses, however, the plaintiff would bear the ultimate burden of persuasion at trial to overcome qualified immunity by showing a violation of clearly established law." *Id*.

Thus, at summary judgment, the Court must "**grant qualified immunity unless the plaintiff can show** (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id.* (emphasis added); *Martinez v. Beggs*, 563 F.4d 1082, 1988 (10th Cir. 2009). The Court may "consider the two parts of this test in the sequence [it] deem[s] best 'in light of the circumstances in the particular case at hand.'" *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236). "If a 'plaintiff successfully carries his two-part burden,' the 'defendant bears the burden, as an ordinary movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity.'" *Henderson*, 813 F.3d at 952 (quoting *Mick v. Brewer*, 67 F.3d 1127, 1134 (10th Cir. 1996)).

## III.   DISCUSSION

## A.   FIRST CLAIM FOR RELIEF: UNLAWFUL SEIZURE OF PERSON

Plaintiff's First Claim for Relief alleges that Defendants intentionally deprived him of his right to be free from unlawful seizure when they: (a) detained him, and (b) subsequently arrested him.  (Doc. # 1 at 8.)  Plaintiff asserts that "[n]o officer Defendant had probable cause, reasonable suspicion, or any other legal basis to believe that [he] committed or was committing any violation of the law prior to seizing him and continuing to restrain him."  (*Id.*)

### 1.   Violation of a constitutional right

#### a.   *Initial investigative detention*

"To initiate a seizure by means of an investigative detention, an officer must have an articulable and reasonable suspicion that the person is engaged in criminal activity." *United States v. Madden*, 682 F.3d 920, 925–26 (10th Cir. 2012) (citing *United States v. Lambert*, 46 F.3d 1064, 1069 (10th Cir. 1995)).  "A reasonable suspicion analysis is based upon the 'totality of the circumstances,' and 'officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1206–07 (10th Cir. 2008) (quoting *United States v. Arvizu*, 534 U.S. 266, 237 (2002)).  "Although an officer's reliance on a mere 'hunch' is insufficient to justify" the seizure of a person, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard."  *Arvizu*, 524 U.S. at 274.

Plaintiff has shown that a reasonable jury could determine that Defendants lacked reasonable suspicion to detain him and that they violated his constitutional rights by doing so. *See Henderson*, 813 F.3d at 952. Defendants argue that at the time they approached Plaintiff's vehicle, they had reasonable suspicion "that he violated a least two Denver Municipal Ordinances and [one] Colorado state law." (Doc. # 65 at 9.) However, for each of the three possible bases of Defendants' purportedly reasonable suspicion, Plaintiff points to genuine issues of material fact that could allow a reasonable jury to find that Defendants did not have a reasonable suspicion that Plaintiff was violating the ordinance or statute.

First, Defendants argue that they had reasonable suspicion that Plaintiff was violating Denver's municipal ordinance on trespassing, D.R.M.C. § 38-115:

> (a)  It is unlawful for any person knowingly to enter or remain upon the premises of another when consent to enter or remain is absent, denied, or withdrawn by the owner, occupant, or person having lawful control thereof.
> (b)  It shall be prima facie evidence that consent is absent, denied, or withdrawn, to enter or remain upon the premises of another when:
> > …
> > (3) Private property or public property, which is not then open to the public, is posted with signs which give notice that entrance is forbidden.

(Doc. # 65 at 9.)  Defendants rely on their observations that "the area and building where [Plaintiff] was parked" was known "for illegal activity;" that Plaintiff "was discovered in a vehicle parked, in the very early morning hours, in the garage clearly marked "No Trespassing;" that Plaintiff made "no attempt to leave the garage or exit the vehicle;" and that the license plate on Plaintiff's car "was registered to an Aurora address" as circumstances that gave rise to their suspicion that Plaintiff was violating

Denver's trespassing ordinance. (*Id.*) Plaintiff counters that any suspicion Defendants had that he was violating the trespass ordinance was not reasonable because Defendants admit that they did not know whether Plaintiff "did or did not have permission to be there" when they approached him and because Plaintiff told Defendants that he was waiting for his friend. (Doc. # 72 at 3–4.) As to Defendants' concern that Plaintiff's car was registered to an address in Aurora, Plaintiff argues that "[t]he fact that a person is driving a vehicle registered to another city does not lead to a reasonable suspicion that they lack consent from the tenant of the property to be there." (*Id.* at 5.) Viewing the facts in the light most favorable to Plaintiff, the Court agrees with Plaintiff that a reasonable jury could determine that Defendants did not have reasonable suspicion that Plaintiff was violating Denver's trespass ordinance and that they therefore violated his Fourth Amendment right to be free from unlawful seizure.

Second, Defendants assert that they also had reasonable suspicion that Plaintiff was in violation of the Colorado state law on trespass. (Doc. # 65 at 9–10.) Colo. Rev. Stat. § 18-4-503(b) provides that a person commits second degree criminal trespass if the person "[k]nowingly and unlawfully enters or remains in or upon the common areas of a hotel, motel, condominium, or apartment building." For the same reasons identified in the previous paragraph, the Court concludes that a reasonable jury could find that Defendants did not have reasonable suspicion that Plaintiff was violating this state statute and violated his constitutional right to be free from unlawful seizure upon detaining him.

Third, Defendants argue that they had reasonable suspicion that Plaintiff was disobeying Denver's municipal ordinance on illegal parking.  (Doc. # 65 at 10.) D.R.M.C. § 54-419 provides, "It shall be unlawful for any person to park . . . a vehicle . . . otherwise than temporarily for the purpose of, and while actually engaged in, loading or unloading, in a private driveway or on private property without the express or implied consent of the owner or person in lawful possession of such driveway or property." Defendants contend that because Plaintiff "was parked in a spot reserved for business, at 1:30 a.m., clearly outside business hours," they had reasonable suspicion that he was in violation of the Denver code on illegal parking.  (Doc. # 65 at 10.)  However, Defendant Manriquez testified that Plaintiff told him he was waiting to pick someone up and that Defendants did not ask Plaintiff any other questions regarding his presence. (Doc. # 73-1 at 13.)  Moreover, Plaintiff testified that he "was just there for two minutes" before he called his friend to let her know he had arrived and that it was "[p]robably like a minute" later that Defendants arrived.  (*Id.* at 4.)  Taking Plaintiff's sworn deposition testimony in the light most favorable to him, Defendants did not observe Plaintiff for enough time to determine if he was loading or unloading his vehicle.  *See* (Doc. # 73 at 7.)  The Court therefore concludes that Plaintiff has shown a reasonable jury could find that Defendants did not have reasonable suspicion that Plaintiff was in violation of Denver's ordinance on illegal parking and that they thereby violated his constitutional rights when they initially detained him.

### b.    Subsequent arrest

"Because an arrest is 'the most intrusive of Fourth Amendment seizures,' an arrest is 'reasonable only if supported by probable cause.'"  *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011) (quoting *United States v. White*, 584 F.3d 935, 945 (10th Cir. 2009)).  The Court of Appeals for the Tenth Circuit has explained:

> "Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense has been or is being committed by the person to be arrested." *United States v. Alonso,* 790 F.2d 1489, 1496 (10th Cir. 1986). This is an objective standard, and thus "[t]he subjective belief of an individual officer as to whether there was probable cause for making an arrest is not dispositive." *United States v. Valenzuela,* 365 F.3d 892, 896 (10th Cir. 2004). Whether a reasonable officer would believe that there was probable cause to arrest in a given situation is based on the totality of the circumstances. *Id.* at 897.

*Id*.  In considering the totality of the circumstances, the Court must take "into account both inculpatory as well as exculpatory evidence."  *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008) (citing *Wilder v. Turner*, 490 F.3d 810, 814 (10th Cir. 2007)).  "In general, 'it is a jury question in a civil rights suit whether an officer had probable cause to arrest.'"  *Id*. (quoting *DeLoach v. Bevers*, 922 F.2d 618, 623 (10th Cir. 1990)).

Plaintiff has demonstrated that a reasonable jury could find that Defendants did not have probable cause to arrest him and that they thereby violated his Fourth Amendment rights.  *See Henderson*, 813 F.3d at 952.  Defendants briefly assert that at the time they arrested Plaintiff, they "had probable cause to believe he had committed at least three crimes."  (Doc. # 65 at 10.)  For each of these three possible bases of

probable cause though, Plaintiff raises genuine issues of material fact upon which jurors may determine that there was no probable cause for believing that Plaintiff was breaking the law.

First and second, Defendants assert that they had to probable cause to believe that Plaintiff was trespassing in violation of (1) the Denver municipal ordinance on trespassing, D.R.M.C. § 38-115, and (2) the Colorado statute criminalizing trespassing, Colo. Rev. Stat. § 18-4-503(b).  (*Id.*)  Defendants restate the argument they made in defending their investigative detention of Plaintiff: that they found Plaintiff, "in the middle of the night, in a parked vehicle registered to an Aurora address in the private parking lot of an apartment building that was posted 'No Trespassing.'"  (*Id.*)  However, for the reasons the Court set forth above in Section III(A)(1)(a), a reasonable jury could determine that Defendants lacked even reasonable suspicion—a much lower standard than probable cause—that Plaintiff was trespassing in violation of the municipal ordinance and state law.  The Court therefore rejects Defendants' first and second rationales for arresting Plaintiff for purposes of their Motion for Summary Judgment.

Third, Defendants argue that they had "sufficient probable cause to arrest [Plaintiff] for violating" Denver's municipal ordinance on interference with the duties of a police officer, D.R.M.C. § 38-31(c), which makes it unlawful to "fail to obey a lawful order of a police officer if such failure interferes with or hinders such police officer in the discharge of his official duties."[2]  (*Id.* at 13.)  Defendants allege that Plaintiff "violated

---

[2] D.R.M.C. § 38-31(c) – Interference with police authority, provides in full: "It shall be unlawful for any person to fail to obey a lawful order of a police officer if such failure interferes with or

direct orders from [Defendant] Black at least eight times.  [Defendant] Black specifically identified for [Plaintiff] that he was giving him a lawful order to come out of his vehicle which order [sic] [Plaintiff] ignored."  (*Id.*)  Plaintiff responds that he "was not required to comply with Defendant Black's order to get out of the vehicle" because "Defendants did not even have reasonable suspicion to detain [him]."  (Doc. # 73 at 9 (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) (holding that only "once a motor vehicle has been lawfully detained for a traffic violation" may a police officer "order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.")))

For purposes of deciding Defendants' Motion for Summary Judgment, the Court is persuaded by Plaintiff's argument.  As the Court explained earlier, Plaintiff has alleged facts upon which a reasonable jury could find that Defendants lacked reasonable suspicion to believe that criminal activity was afoot.  And if Defendants lacked reasonable suspicion, their orders to Plaintiff to get out of his car were unlawful, and they lacked probable cause to arrest Plaintiff for failing to comply with their orders. *See Brown v. Texas*, 443 U.S. 47, 52–53 ("The application of [a Texas statute] to detain appellant and require him to identify himself violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe appellant was engaged or had engaged in criminal conduct.")  The Court therefore concludes that Plaintiff has satisfactorily demonstrated that a reasonable jury could find that Defendants did not

---

hinders such police officer in the discharge of his official duties. It is an affirmative defense to this subsection that the failure to obey did not interfere with or hinder the police officers."

have probable cause to believe that Plaintiff was in violation of the municipal ordinance and that they violated his constitutional rights upon arresting him.

For the aforementioned reasons, the Court is satisfied that Plaintiff has shown a reasonable jury could find facts supporting a violation of Plaintiff's constitutional right to be free from unreasonable seizures—the first element of surviving Defendants' assertion of qualified immunity. *See Henderson*, 813 F.3d at 952.

    2.   <u>Clearly established law</u>

        *a.*    *Initial investigative detention*

Plaintiff has shown that at the time Defendants initially detained him, the law was clearly established that people cannot be detained against their will when officers lack reasonable suspicion that they committed or are going to commit a crime. *See* (Doc. # 73 at 7–8 (citing, *e.g.*, *Romero v. Story*, 672 F.3d 889, 888 (10th Cir. 2012) ("A citizen has the constitutional right to walk away from a law enforcement officer who lacks . . . reasonable suspicion to detain or seize him or her."))); *see also Wilson v. Dep't of Pub. Safety*, 66 F. App'x 791, 796–97 (10th Cir. 2003) ("The Fourth Amendment requirement that traffic stops must be based on at least a reasonable suspicion of a traffic violation is clearly established.") Defendants' argument that it was not clearly established "that it would have been clear to a reasonable officer that he lacked a reasonable suspicion to approach a suspect under these circumstances"—the circumstances at issue in Plaintiff's allegations—is unavailing. *See* (Doc. # 65 at 12.) Defendants misstate the standard for clearly established law. There need not be a case with the **same** circumstances for a right to be clearly established. "The Supreme Court has explained

that 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

    b.    *Subsequent arrest*

Taking Plaintiff's allegations in the light most favorable to him, Defendants arrested Plaintiff for failing obey their orders and to submit to detention even though they lacked any reasonable suspicion warranting an investigative detention. As Magistrate Judge Varholak discussed in his Recommendation on Defendants' Motions to Dismiss, *see* (Doc. # 46 at 14), Supreme Court precedent has clearly established that officers cannot arrest an individual for failing to identify himself when the officers lack reasonable suspicion of criminal activity. For example, in *Brown v. Texas*, 443 U.S. 47 (1979), a case Plaintiff cites, *see* (Doc. # 73 at 11), police officers approached Brown in an alleyway of an area known for drug traffic and asked him to identify himself and explain his purpose for being there. *Brown*, 443 U.S. at 48–49. When Brown refused to do so, the officers arrested him for violation of a state statute that made it a criminal act for a person to refuse to give his name and address to an officer who had lawfully stopped him and requested the information. *Id.* at 49. The Supreme Court held that application of the state statute violated Brown's Fourth Amendment rights "because the officers lacked any reasonable suspicion to believe [Brown] was engaged or had engaged in criminal conduct." *Id.* at 53; *see also Florida v. Bostick*, 501 U.S. 429, 437 (1991) ("We have consistently held that a refusal to cooperate, without more, does not furnish the minimal objective justification for a detention or seizure."); *Oliver v. Woods*,

209 F.3d 1179, 1187 (10th Cir. 2000) (using *Brown* as an example of clearly established law regarding whether officers had reasonable suspicion for an investigatory detention and were entitled to qualified immunity.)

For the foregoing reasons, the Court concludes that with respect to his First Claim for Relief Plaintiff has shown that "(1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *See Henderson*, 813 F.3d at 952. Defendants therefore do not have qualified immunity to Plaintiff's First Claim for Relief and are not entitled to summary judgment on that claim.

## B.      SECOND CLAIM FOR RELIEF: UNLAWFUL SEARCH OF PERSON

Plaintiff alleges in his Second Claim for Relief that Defendants deprived him of his Fourth Amendment right to be secure in his person against unreasonable searches by conducting a pat-down search of his body without a warrant to do so after they placed him in handcuffs. (Doc. # 1 at 9–10.) Plaintiff also asserts that "[n]o legally recognizable exigent circumstances or other legal justifications existed which would have justified or permitted [Defendants'] conduct." (*Id.* at 10.)

1.      <u>Violation of a constitutional right</u>

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). "The

constitutionality of a search incident to arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search." *Michigan v. DeFillippo*, 443 U.S. 31, 25 (1979).

Defendants assert that because their arrest of Plaintiff was supported by "arguable probable cause" and thus lawful, they "were within constitutional requirements conducting a pat-down search of [Plaintiff's] person after his arrest." (Doc. # 65 at 15.) However, as the Court explained in the preceding section, Plaintiff has demonstrated that a reasonable jury could find that Defendants did not have probable cause to arrest him. Without probable cause for arrest, Defendants' search of Plaintiff's person was unlawful. The Court therefore concludes that Plaintiff has sufficiently alleged violation of a constitutional right in his Second Claim for Relief.

      2.   <u>Clearly established law</u>

The law is clearly established that officers need either a warrant or a valid exception to the warrant requirement in order to search a person. *See Katz*, 389 U.S. at 357. The Court agrees with Magistrate Judge Varholak's previous statement in this matter that "based on *Katz* and *Gant*, no reasonable officer, with the belief that an initial encounter was consensual and, and without probable cause for the ensuing arrest, would have believed he had the authority to conduct a search incident to that arrest." (Doc. # 46 at 16.) The Court is satisfied that the law was clearly established at the time of Defendants' alleged conduct.

Plaintiff has thus shown with respect to his Second Claim for Relief that "(1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *See Henderson*, 813 F.3d at 952. The Court denies Defendants' Motion for Summary Judgment as to Plaintiff's second claim because Defendants lack qualified immunity.

## C. THIRD CLAIM FOR RELIEF: UNLAWFUL ENTRY AND SEARCH OF VEHICLE

Plaintiff asserts that after Defendants arrested and searched him, "[Defendant] Manriquez . . . returned to the passenger side of Plaintiff's vehicle, opened the door, and began to search the car." (Doc. # 1 at 6.) In his Third Claim for Relief, Plaintiff claims that Defendant Manriquez violated his Fourth and Fourteenth Amendment rights by unlawfully entering and searching his vehicle. (*Id.* at 10–11.) The search was unlawful, Plaintiff continues, because Defendant Manriquez "had no reasonable suspicion, probable cause, consent, or exigency necessary to lawfully search Plaintiff's vehicle." (*Id.* at 11.) Defendants argue that they reasonably believed Plaintiff posed a danger and had a gun in his car, necessitating the search of his passenger compartment. (Doc. # 65 at 16.)

### 1. Violation of a constitutional right

"Officers can conduct a protective search of a vehicle's passenger compartment for weapons during an investigative detention when officers have a reasonable belief that a suspect poses a danger." *United States v. Dennison*, 410 F.3d 1203, 1210 (10th Cir. 2005) (citing *Michigan v. Long*, 463 U.S. 1032, 1036 (1983)). An officer's belief that the subject is dangerous must be "based on 'specific and articulable facts which, taken

together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of the weapons." *Long*, 463 U.S. at 1049 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id*. (quoting *Terry*, 392 U.S. at 27.)

Plaintiff has shown that a reasonable jury could find that Defendant Manriquez's belief that Plaintiff posed a danger was unreasonable and that he therefore violated Plaintiff's constitutional rights by searching Plaintiff's vehicle. Defendants assert that "the undisputed facts show that [Plaintiff] had behaved suspiciously throughout the encounter with [Defendants], including starting his vehicle as [Defendants] approached, disobeying multiple orders, and repeatedly reaching to his pants pocket" (Doc. # 65 at 17–18), but Plaintiff argues that "[t]hese are insufficient reasons to believe that [he] was armed and dangerous" (Doc. # 73 at 14). Resolving all factual disputes and inferences in Plaintiff's favor, *see Henderson*, 813 F.3d at 952, the Court agrees with him that a jury may determine that Defendants' allegations are insufficient to instill in a reasonably prudent man in the circumstances a belief that Plaintiff posed a danger. *See United States v. McKoy*, 428 F.3d 38, 41 (1st Cir. 2005) ("It is simply not reasonable to infer that a driver is armed and dangerous because the officers believe that he appears nervous and reaches toward the car's console when approached by policy, even in a high-crime neighborhood.") The Court is satisfied with Plaintiff's allegation of a violation

of his constitutional rights in his Third Claim for Relief for purposes of resolving Defendants' Motion for Summary Judgment.

    2.   <u>Clearly established law</u>

At the time of Defendants' alleged conduct, the law was clearly established that only when "an officer conducting a Terry stop reasonably believes the detainee 'is dangerous and may gain immediate control of weapons,' he may search 'the passenger compartment of the detainee's automobile, limited to those areas in which a weapon may be placed or hidden.'" *United States v. Holt*, 229 F.3d 931, 938 (10th Cir. 2000) (quoting *Long*, 463 U.S. at 1049). The Tenth Circuit has clarified that it is only "[i]f and when an officer is posed with circumstances that give rise to a reasonable safety concern" does "existing case law allow[] him to take necessary steps to protect himself (e.g., . . . searching the passenger compartment of the detainee's vehicle)." *Id.* at 940. Notably, Defendants do not contest that the law regarding Plaintiff's Third Claim for Relief was clearly established. *See generally* (Doc. ## 65, 76.)

With respect to his Third Claim for Relief, Plaintiff has demonstrated that "(1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *See Henderson*, 813 F.3d at 952. Defendants' assertion of qualified immunity therefore fails, and the Court cannot enter summary judgment in their favor on the third claim at issue.

## D.    FIFTH CLAIM FOR RELIEF: DENIAL OF EQUAL PROTECTION

Plaintiff asserts in his Fifth Claim for Relief that his "race was a motivating factor in the decisions to contact and detain him, and to arrest and search his person and

vehicle. [Defendants'] conduct was undertaken with the purpose of depriving Plaintiff of the equal protection and benefits of the law." (Doc. # 1 at 12.)

      1.   <u>Violation of a constitutional right</u>

The Fourteenth Amendment to "the Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). A claim for racially selective law enforcement requires the plaintiff to demonstrate that (1) the defendant's actions had a discriminatory effect, and (2) were motivated by a discriminatory purpose. *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003) (citing *United States v. Armstrong*, 517 U.S. 456 (1996)). As to the latter element, "[t]he discriminatory purpose need not be the only purpose, but it must be a motivating factor in the decision." *Id*. (citing *Villanueva v. Carere*, 85 F.3d 481, 485 (10th Cir. 1996)).

Plaintiff has failed to show that a reasonable jury could find facts supporting a finding of racially selective law enforcement and a violation of his Fourteenth Amendment right to the equal protection of the laws. Plaintiff's allegations fall short at the first element of a claim for racially selective law enforcement; he has not demonstrated that Defendants' actions had a discriminatory effect. In the Tenth Circuit, "a defendant can demonstrate discriminatory effect by either showing a similarly situated individual, or by relying on statistical evidence." *United States v. Mesa-Roche*, 288 F. Supp. 2d 1172, 1186 (D. Kan. 2003) (citing *Marshall*, 345 F.3d at 1166–69). In this matter, Plaintiff has done neither. *See generally* (Doc. # 73.) Plaintiff merely compares Defendant Manriquez's testimony "regarding the normal law enforcement

protocol when officers see people sitting alone in their cars" to how "defendants treated [him] in the present case." (*Id.* at 18.) Plaintiff does not cite, nor has this Court found, any authority suggesting that such a comparison is sufficient to establish discriminatory effect. Accordingly, the Court concludes that Plaintiff has not shown a violation of his constitutional right to the equal protection of the law. It follows Defendants are entitled to summary judgment on this claim, and the Court need not reach whether the law was clearly established at the time of Defendants' alleged conduct.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment (Doc. # 65). It is

FURTHER ORDERED that Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's Fifth Claim for Relief. This claim is dismissed in its entirety. It is

FURTHER ORDERED that Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's First, Second, and Third Claims for Relief. These claims remain as alleged against Defendants.

DATED: April 18, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge